# Third District Court of Appeal

## State of Florida

Opinion filed December 23, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-2429
Lower Tribunal No. 03-28843B
_____


**Dulie Alonzo Green, Jr.,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Dennis J. Murphy and Mark Blumstein, Judges.

Carlos J. Martinez, Public Defender, and Jonathan Greenberg and Manuel Alvarez, Assistant Public Defenders, for appellant.

Ashley Moody, Attorney General, and Richard L. Polin, Assistant Attorney General, for appellee.


Before FERNANDEZ, LINDSEY, and GORDO, JJ.

LINDSEY, J.

Dulie Alfonzo Green, Jr., who was a juvenile offender, appeals from a final order imposing a sentence following a resentencing hearing conducted pursuant to Miller v. Alabama, 567 U.S. 460 (2012). Green argues a jury was required to make the factual finding that he actually killed or intended to kill the victim. We agree, and because we conclude, based on the record before us, that this violation cannot be deemed harmless, we reverse.

## I.   BACKGROUND

In 1995, police discovered Ms. Beverly Jackson's body in the trunk of a car that had been submerged in a canal. The cause of death was drowning, and the victim had bruising on her scalp. The autopsy and DNA evidence indicated she had sexual intercourse prior to her death. The case went cold until 2003, when Vilsion Laurenvil came forward and told police about several incriminating statements Green had allegedly made. After further investigation, Green and co-defendant Victor Pestano were arrested and charged with first-degree murder, armed sexual battery, armed carjacking, and kidnapping with a weapon for the crimes committed in 1995, when Green was 15 years old.

The jury was instructed on principal theory and was also instructed on first-degree premeditated murder and first-degree felony murder. Green was convicted as charged; however, the verdict form did not specify the theory under which Green

2

was found guilty of first-degree murder. The trial court sentenced Green to life in prison for each count, and this Court affirmed. Green v. State, 980 So. 2d 504 (Fla. 3d DCA 2008).

In 2010, the U.S. Supreme Court held that sentencing a juvenile offender to life without parole for a non-homicide offense violates the Eighth Amendment. Graham v. Florida, 560 U.S. 48 (2010). In 2012, the U.S. Supreme Court held that automatically sentencing a juvenile offender to life for a homicide offense is likewise unconstitutional. Miller, 567 U.S. 460. Green filed a motion for post-conviction relief based on Graham and Miller, and the trial court vacated his life sentences and held a resentencing hearing in November 2018.

At the hearing, the parties agreed the proper procedure was to vacate the original sentence and resentence Green de novo. The parties also agreed Green had to be resentenced in conformance with chapter 2014-220, Laws of Florida, which the Florida legislature unanimously enacted to bring Florida's juvenile sentencing statutes into compliance with Graham and Miller.

Chapter 2014-220 amended section 775.082(1)(b), Florida Statutes, to provide as follows:

> 1. **A person who actually killed, intended to kill, or attempted to kill the victim** and who is convicted under s. 782.04 of a capital felony, or an offense that was reclassified as a capital felony, which was committed before the person attained 18 years of age shall be punished by a term of imprisonment for life if, after a

3

sentencing hearing conducted by the court in accordance with s. 921.1401, the court finds that life imprisonment is an appropriate sentence. If the court finds that life imprisonment is not an appropriate sentence, such person shall be punished by a term of imprisonment of at least 40 years. A person sentenced pursuant to this subparagraph is entitled to a review of his or her sentence in accordance with s. 921.1402(2)(a).

2. **A person who did not actually kill, intend to kill, or attempt to kill** the victim and who is convicted under s. 782.04 of a capital felony, or an offense that was reclassified as a capital felony, which was committed before the person attained 18 years of age may be punished by a term of imprisonment for life or by a term of years equal to life if, after a sentencing hearing conducted by the court in accordance with s. 921.1401, the court finds that life imprisonment is an appropriate sentence. A person who is sentenced to a term of imprisonment of more than 15 years is entitled to a review of his or her sentence in accordance with s. 921.1402(2)(c).

(Emphasis added).

Green argued, based on <u>Williams v. State</u>, 242 So. 3d 280 (Fla. 2018), that he had to be resentenced under section 775.082(1)(b)2 because there was no jury finding that he actually killed or intended to kill the victim as required by section 775.082(1)(b)1.[1]  The State conceded there was no such finding but argued that the trial court could look at the evidence itself and determine if there was enough to show that Green actually killed or intended to kill.  The court agreed with the State and found that "no rational juror would find anything other than the Defendant, Dulie

---

[1] Since this case involved an actual homicide, attempt is not applicable.

4

Green, actually killed or intended to kill the victim in this case." The court sentenced Green under section 775.082(1)(b)1 and ruled that he was entitled to sentence review after 25 years.[2] Green timely appealed.

## II.    ANALYSIS

In Williams, the Florida Supreme Court held that a jury is required to make the factual finding under section 775.082(1)(b)1 as to whether a juvenile offender actually killed, intended to kill, or attempted to kill the victim. 242 So. 3d at 282. The Court's holding was based on Alleyne v. United States, 570 U.S. 99 (2013), a case in which the U.S. Supreme Court held that any fact that increases the mandatory minimum sentence for an offense is an "element" that must be submitted to a jury and found beyond a reasonable doubt. Cf. Apprendi v. New Jersey, 530 U.S. 466 (2000) (holding that any fact that increases the statutory maximum is an element that must be submitted to a jury and found beyond a reasonable doubt).

Although a jury is required to find that a juvenile actually killed, intended to kill, or attempted to kill the victim under subsection (1)(b)1, the Williams Court held that a violation is subject to harmless error review. That is, "the applicable question in evaluating whether an Alleyne violation is harmful with respect to section 775.082(1)(b) is . . . whether the record demonstrates beyond a reasonable doubt that

---

[2] Under section 775.082(1)(b)2, Green would be eligible for sentence review after 15 years as opposed to 25.

5

a rational jury would have found the juvenile offender actually killed, intended to kill, or attempted to kill the victim." <u>Williams</u>, 242 So. 3d at 290. We emphasize that harmless error is the standard that is applicable in the *reviewing court*; it is not the standard employed by the trial court during resentencing.

On appeal, the State argues that "it is clear from the evidence adduced at trial that the jury would have concluded that Green either actually killed or intended to kill, and that the absence of an express finding by the jury to that effect is an error which is harmless beyond a reasonable doubt." The State's main witness at trial was Laurenvil, who was friends with Green when they were in high school. Laurenvil's statements to the police ultimately led to Green's arrest for which Laurenvil received a reward. At trial, Laurenvil testified that Green had, on several occasions, told him that he and Pestano had killed a lady. Laurenvil also testified that Green had threatened to kill him if he said anything.

The State also points to a videotaped conversation between Green and Pestano that occurred while they were at the police station where Green actively tried to get Pestano to change his story. Additionally, the State claims that Green's credibility "was considerably less than zero" based on the different version of the events he told during the interview process. These different versions had to do with whether Green had consensual sex and whether a third person, Courtney Smith, was involved. But in none of these versions did Green admit to killing or intending to kill the victim.

Finally, the State points to photographic exhibits at trial that showed there was a need for two individuals to push the car into the canal.

Green argues that the State cannot prove harmless error in this case because there were no eyewitnesses, no forensic evidence linking Green to the crime, Laurenvil testified that Green said he did not intend to kill the victim, and Green himself consistently denied killing the victim in statements to the police and at trial. Ultimately, Green contends there were two competing narratives that should have been resolved by a jury. Green also points to the prosecutor's statements at trial. At opening, the prosecutor stated that "we're never going to know the exact details of what happened. We're never going to really know what happened in those last few moments of Beverly Jackson's life." And in closing, the prosecutor told the jury it could convict Green on felony murder. The State also told the jury it could convict Green as a principal if it believed his version of the events and did not believe he actually killed the victim.

Though it is undisputed the State made a strong case, we cannot say that the record in this case demonstrates beyond a reasonable doubt that no rational jury would have concluded that Green did not actually kill or intend to kill the victim. The evidence presented at trial involved two competing narratives, the resolution of which required a credibility determination best suited for the jury and not judicial factfinding. See Williams, 242 So. 3d at 291 (finding an Alleyne violation harmful

7

because "Williams disputed both that he killed [the victim] and that he was a willing participant in the murder. There was sharply conflicting evidence in the form of Williams's statements during his interrogation that he hoped [the victim] would live, and the testimony of the jailhouse informant who painted Williams as both an active participant in the plan to lure [the victim] to the trap house and the actual killer."). This distinguishes the instant case from cases in which courts have found harmless error.

For instance, in Colon v. State, 291 So. 3d 643, 647-48 (Fla. 5th DCA 2020), also a juvenile resentencing case, the Fifth District concluded that a rational jury would have found beyond a reasonable doubt that the defendant actually killed the victim with a firearm because the defendant made "multiple admissions to several persons, including law enforcement, that he shot the victim . . . ." This, in addition to defendant "being in possession of the murder weapon when arrested, no other person having been charged with the murder, nor there being any competent evidence at trial that anyone other than [the defendant] was present at the time [the victim] was murdered" led the court to conclude that "had a rational jury been given the opportunity, it would have found, beyond a reasonable doubt, that [the defendant] actually killed [the victim] with a firearm." Id. at 648.

In another juvenile resentencing case, Brown v. State, 277 So. 3d 616, 621 (Fla. 3d DCA 2018), this Court found harmless error where the defendant told

8

detectives he was the only one armed with a .38 caliber handgun and that he fired the handgun. Police recovered a .38 caliber projectile from the victim's chest, which was the unrefuted cause of death. Id. Here, by contrast, although Green admitted to other elements of the crimes with which he was charged, he never admitted to actually killing or intending to kill the victim. Moreover, there was no physical evidence tying Green to the crime.

## III.     CONCLUSION

Because a jury did not determine whether Green actually killed or intended to kill the victim, and we conclude this violation cannot be deemed harmless, we vacate the sentence and remand for resentencing pursuant to section 775.082(1)(b)2, or, if requested by the State, to empanel a jury to make the necessary factual determination. Cf. Gaymon v. State, 288 So. 3d 1087, 1093 (Fla. 2020) ("[T]he proper remedy for harmful error resulting from the court, not the jury, finding the fact of dangerousness under section 775.082(10) is to remand for resentencing with instructions to empanel a jury to make such a determination, if the State seeks that finding in the defendant's case.").